UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MIMOSA PHAM,<br>    Plaintiff,<br><br>    v.<br><br>DEPARTMENT OF CHILDREN &<br>FAMILIES,<br>    Defendant. | No. 3:09-cv-01869 (JAM) |

### RULING GRANTING MOTION FOR SUMMARY JUDGMENT

Plaintiff Mimosa Pham, *pro se*, brings this employment discrimination action against her former employer, defendant Connecticut Department of Children and Families ("DCF"). Plaintiff alleges that defendant discriminated against her based on her Asian race and Vietnamese ancestry in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). While I am sympathetic to plaintiff's frustrations during her employment at DCF, I conclude that plaintiff cannot demonstrate that any workplace indignities she experienced were by reason of her race, her national origin, or her engagement in protected activity under Title VII. Accordingly, I grant defendant's motion for summary judgment.

### Background

In April 2008, plaintiff was promoted from a job at another state agency to the position of Fiscal/Administrative Officer at DCF. In order to remain in this new position permanently, plaintiff needed to satisfactorily complete a four-month "working test period" – essentially, a probationary period. Among other job responsibilities, a Fiscal/Administrative Officer must communicate with DCF human service providers regarding contract updates, contract budgets,

1

payments, and other matters. Plaintiff's supervisor, Gregory Straka, quickly became concerned with plaintiff's ability to perform these job responsibilities successfully. Straka received multiple complaints from providers about plaintiff's inability to communicate with them, including an email from one provider who requested that "someone competent" be assigned to handle their account. *See* Doc. # 54-5 at 39. Straka was also concerned that plaintiff was not logging information in the DCF "action log." Straka brought these and other issues to plaintiff's attention and he instructed plaintiff to come to him with any questions she might have about her work. He also initiated twice-weekly "supervision meetings" with plaintiff to go over her work. These ameliorative efforts did not prove successful, and Straka continued to be dissatisfied with plaintiff's failure to come to him with questions regarding her work and log information accurately.

In mid-June 2008, Straka gave plaintiff a performance evaluation, designating her work as "fair," which is categorized as "less than good" on the evaluation form. In the evaluation, Straka discussed plaintiff's difficulties with thoroughness and accuracy, her failure to maintain data, and her problems managing and prioritizing multiple tasks. Based on her "less than good" rating, plaintiff was placed on paid administrative leave and "dropped" from her test period position at DCF. Plaintiff was transferred back to her prior position at another state agency.

Plaintiff claims that various obstacles impeded her work at DCF and led to her being "dropped" during the test period.  For example, plaintiff had problems accessing certain computer network drives and databases, although these issues were eventually resolved. She also had several difficulties with her work telephone, including problems with static interference during calls, a recurring issue where her phone calls were disconnected, troubles accessing voicemail messages, and frequent calls from "wrong numbers" apparently due to errors in the

DCF phone directory. Plaintiff attributes any problems communicating with providers to these telephone problems.

Plaintiff also claims that workload was unevenly and unfairly distributed among DCF employees, and that she was assigned additional work while a co-worker was on leave. Additionally, plaintiff complains that she was assigned to park in a lot diagonally across the street rather than in the closer adjacent lot, notwithstanding undisputed evidence that the assignment of employee parking is based on seniority and that plaintiff had less seniority than employees assigned to the adjacent lot.

After plaintiff was "dropped" from the test period and transferred back to her previous position, she timely filed this lawsuit against defendant, claiming that she was the victim of disparate treatment, a hostile work environment, and retaliation, all in violation of Title VII. Defendant has moved for summary judgment.

**Discussion**

The principles governing a motion for summary judgment are well established. Summary judgment may be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014). "A genuine dispute of material fact 'exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor.'" *Zann Kwan v. Andalex Group, LLC*, 737 F.3d 834, 843 (2d Cir. 2013) (quoting *Guilbert v. Gardner*, 480 F.3d 140, 145 (2d Cir. 2007)). The evidence adduced at the summary judgment stage must be viewed in the light most favorable to the non-moving party and with all ambiguities and reasonable inferences drawn against the moving party. *See, e.g.*, *Tolan*, 134 S.

Ct. at 1866; *Caronia v. Phillip Morris USA, Inc.*, 715 F.3d 417, 427 (2d Cir. 2013). All in all, "a 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan*, 134 S. Ct. at 1866 (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986)).

Title VII prohibits an employer from engaging in intentional employment discrimination – known as "disparate treatment" – on the basis of race or national origin. *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009); *see also* 42 U.S.C. § 2000e-2(a)(1)-(2). Title VII also prohibits employers from subjecting employees to a hostile work environment – that is, a "work environment . . . so pervaded by discrimination that the terms and conditions of employment were altered." *Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2441 (2013) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). In addition, Title VII prohibits an employer from retaliating against an employee "because [the employee] has opposed . . . an unlawful employment practice" or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII.  42 U.S.C. § 2000e-3(a); *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2528 (2013). In this case, plaintiff has brought claims under all three theories – disparate treatment, hostile work environment, and retaliation – and I address each claim in turn below.

First, plaintiff's disparate treatment claim is governed by the familiar *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010). Under this three-step framework, "a plaintiff first bears the minimal burden of setting out a *prima facie* discrimination case, and is then aided by a presumption of discrimination unless the defendant proffers a legitimate, nondiscriminatory reason for the adverse employment action, in which event, the

presumption evaporates and the plaintiff must prove that the employer's proffered reason was a pretext for discrimination." *McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211, 215 (2d Cir. 2006) (internal quotation marks and citation omitted). To establish an initial *prima facie* case of discrimination, the plaintiff must show: (1) that she belongs to a class of persons who are protected from discrimination under Title VII; (2) that she was qualified for the job; (3) that she suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of invidious discrimination. *See, e.g., Vivenzio*, 611 F.3d at 106.

Applying these standards to the present case, I conclude that plaintiff's disparate treatment claim must fail. At the initial *McDonnell Douglas* step, plaintiff cannot make out a *prima facie* discrimination claim because she has not made any showing that any adverse treatment she sustained gives rise to an inference that it was because of her Asian descent or Vietnamese national origin. An inference of discrimination can arise where a plaintiff of one race or national origin is treated less favorably than a comparable employee of another race or national origin, but the comparable individual must be "similarly situated in all material respects." *See, e.g., Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000). Plaintiff claims that a Caucasian employee who began a working test period as a Fiscal/Administrative Officer at the same time did not suffer similar telephone and computer problems and was given a parking space in the closest lot. But there is a straightforward explanation for their different experiences: the other employee was already working at DCF in a different division, was able to keep her preexisting telephone number, already had relevant computer access, and had more seniority entitling her to park in the closer parking lot. Plaintiff also complains that a Caucasian DCF employee with insufficient seniority was given a space in the adjacent lot, but there is no

genuine dispute that this was due to a mere clerical error and, once the error was discovered, that employee was reassigned to the farther parking lot diagonally across the street in accordance with his seniority. Additionally, while "the mere fact that a plaintiff was replaced by someone outside the protected class will suffice for the required inference of discrimination at the *prima facie* stage of the Title VII analysis," *Zimmermann v. Associates First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001), the record in this case is devoid of any information regarding who – if anyone – replaced plaintiff at DCF. The facts here do not remotely create an inference that racial bias was the source of plaintiff's technical problems, parking woes, or failure to successfully complete the test period.

Moreover, even if plaintiff could make out a *prima facie* case, her disparate treatment claim could not withstand scrutiny at the third *McDonnell Douglas* stage because defendant has offered a legitimate nondiscriminatory reason for "dropping" her during the working test period – her work performance, as documented by Straka's performance review, was "less than good" – and plaintiff has not adduced any evidence showing that this reason was pretextual. There is ample undisputed evidence that she was not performing her job duties satisfactorily. In a job where communication with providers is of paramount importance, plaintiff's supervisor, Straka, repeatedly received complaints from providers who had trouble communicating with plaintiff. Straka also had concerns that plaintiff was not accurately logging information or asking for assistance when she did not understand aspects of her work.

Second, plaintiff complains that the aforementioned telephone, computer, and parking problems were acts of harassment that created a hostile work environment. Even if plaintiff could somehow demonstrate that she experienced an abusive environment at DCF that satisfies the rigorous standard required for hostile work environment claims, such mistreatment would be

6

actionable under Title VII only if it occurred because of plaintiff's protected characteristics. *See Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007) (*per curiam*). Because there is no evidence that plaintiff was subjected to any derogatory remarks or other abuse based on her race or national origin, no genuine issue of fact supports her claim of a hostile work environment under Title VII.

Finally, plaintiff's retaliation claim finds no support in the record. A *prima facie* case for retaliation requires: "'(1) participation in a protected activity [such as the filing of a discrimination claim]; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action.'" *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010) (quoting *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005)). The causation element naturally requires that the protected activity occur *before* the adverse employment action. *Cf. Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001) ("Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well *before* the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." (Emphasis added.)). Here, however, plaintiff's only protected activities—filing discrimination complaints with the Equal Employment Opportunity Commission and the Connecticut Commission on Human Rights and Opportunities—occurred months *after* the only adverse employment action: the "dropping" of plaintiff from the DCF test period. Absent a causal connection, plaintiff cannot make out a *prima facie* retaliation claim.

I have no doubt that plaintiff's experience at DCF was a difficult one, filled with a variety of technical problems and frustrating interactions with providers. But just as Title VII does not create "a general civility code for the American workplace," *Oncale v. Sundowner Offshore*

*Servs., Inc.*, 523 U.S. 75, 80 (1998), it does not ensure a workplace free from stress and aggravation. Even viewing the evidence in the light most favorable to plaintiff, it is clear that there are no triable issues regarding her Title VII claims.

Accordingly, I GRANT defendant's motion for summary judgment.

The Clerk is directed to close this case.

It is so ordered.

Dated at Bridgeport this 11th day of July 2014.

/s/
Jeffrey Alker Meyer
United States District Judge